RICHARD T. WATERS, THOMAS D. PURNELL, SAMUEL H. JARMAN, GEORGE T. PAYNE and LITTLETON R. PURNELL v. AMOR H. HARVEY, surviving partner of the late firm of HOLLINGSWORTH, HARVEY & Co.

In an action for a breach of contract in not making a steam boiler

according to the written specifications prescribed in it, the plaintiff
cannot recover, if he knew of the change and modification made in the
construction of it, or had a reasonable opportunity of inspecting and
examining it and of ascertaining the same, before he accepted and paid
for it.

ASSUMPSIT with the usual pleas. The plaintiffs had
entered into a contract with the late firm of Hollings-
worth, Harvey & Co., who were manufacturers of steam
engines, in the month of March, 1864, for making and
putting into a boat belonging to them, a steamboat boiler
according to certain prescribed specifications for the sum
of $6600. The principal specifications were that it was to
be built with forty-four return flues or tubes of good
material and in a workmanlike manner, which was com-
pleted and put in the boat and delivered, and was accept-
ed and paid for by the plaintiffs in December following,
but which was made with forty-eight, instead of forty-
four flues. The boat was then taken from Wilmington to
the Chesapeake by the plaintiffs, and was put on the route
from Snowhill to Baltimore and run once a week each way,
a distance of one hundred and eighty miles, until April or
May following, when a leak occurred in it sufficient to
extinguish the fire in the furnaces, and in consequence of
which, she had to be laid up in Baltimore six weeks un-
til the head sheet could be taken out and a new one put in
it, after which it kept up a very good head of steam for
about a month, and although subsequently repaired there
several times, which would stop the leak for a trip or
two, it would then be as bad as ever. The action was for
a breach of the contract in not building it according to
the specifications and agreement, and the plaintiffs proved
by witnesses of skill and experience in the art, that it was
defectively built by reason of the construction of the boiler
of the size and diameter in question, with forty-eight in-
stead of forty-four flues of the dimensions they were, and
because they were inserted at unequal distances apart in
the sheet head of it, which together would produce and
exert, both too much and an unequal force upon it, and

which had fractured or cracked it, and thereby caused the leak; and that it was imperfectly and improperly made. The defendant proved by the same kind of testimony, that from forty to fifty flues may be put in the sheet head of a steam boiler, and as near as three-eighths to a half an inch apart without weakening the head, or impairing the make and value of it, and that the material was good and the work well done; and also by a witness whom the defendants had sent down to Newtown in July 1865 to repair it, who testified that he found the two top rows of tubes incrusted with white scale to the thickness of an eight of an inch, which was attributable to the fact that the engineer and fireman had not kept up water sufficient in the boiler when running the boat to cover them, and they had sprung and become loosened at the sheet head by reason of it, which caused the leak, and that was all that was then the matter with it, which he repaired and put in good order; and that he was afterward sent down with another workman to Baltimore in August the same year to repair it, and found a small crack in the sheet head between two of the flues near the bottom row of them, which was all that was then the matter with it, and which they repaired and made a perfectly tight job of it, and the owners were satisfied with it; but the witnesses all admitted that the spaces between the tubes were less than usual and less than they should have been, and would have a tendency to weaken the flue sheet. The defendant also proved that Mr. Waters, one of the plaintiffs, was at their establishment in Wilmington several times whilst they were building the boiler, and knew they were putting forty-eight instead of forty-four flues in it, and was present when they put the boiler into the boat, and saw and had full opportunity of inspecting it, but made no objection to it.

*Higgens*, (*Bradford* with him), for the defendant. As there was no proof of any defect in the quality of the iron of which the boiler was made, the only question of fact for

the jury to consider was whether the imperfection alleged in the construction of it, was the cause of the damages complained of by the plaintiffs, and which they were seeking to recover in the action, or that the loss which they had sustained was entirely owing to the bad use and management of it by the engineer and other servants, whose duty it was to attend to it after it was put into their boat, and their boat to running on their line from Snowhill to Baltimore, by their neglecting to keep it sufficiently supplied with water when under the pressure of steam, or that it was owing to any other neglect on their part ; for it was well known that by such inattention and neglect, the best built steam boiler might soon be entirely ruined or rendered utterly useless without incessant repairs upon it.    For if the defects proved in the working of it, or the leaking was solely attributable to such negligence, or to any want of proper skill and experience on the part of their servants in the management and operation of it, the plaintiffs were not entitled to recover.   3 *Pars. on Contr.* 177.   But even admitting that it was constructed with more flues than were usually made in a boiler of its dimensions, forty-eight instead of forty-four, and with irregular and smaller spaces between them than usual, and that was the true and only cause of the small crack or fracture in the sheet head and of the leaking of it, if Mr. Waters, one of the plaintiffs, and their chosen agent and plenipotentiary in the business, after having several times seen it at the shops of the defendant during the progress of the construction of it, and again after it was finished and when it was put into the boat and finally delivered to the plaintiffs, and knowing, as he must have known, of the substitution of the forty-eight for the forty-four flues prescribed and contracted to be put in it, for it was unreasonable to suppose that the builders would have gratuitously added even that number to the expense of the work they were bound to perform under the contract, without his sanction and approval, at least, and after having had such abundaut opportunities to discover this inherent de-

fect, if such it was, in the construction of it, because it must have been patent and obvious to any one who merely looked at the head sheet of the boiler after they had been put in it, he deliberately accepted it, and paid for it on behalf of the plaintiffs without objection and without any further contract, promise, or assurance on the part of the makers of it, the plaintiffs could not recover. *Add. on Contr.* 54, 455.  *Miller et al. v. Tucker*, 11 *E. C. L. R.* 300.  *Campbell v. Fleming et al.* 28 *E. C. L. R.* 40.

*Gordon*, for the plaintiffs. The cases cited by the counsel on the other side showed what was very good and well settled law, that if the contracting party for whom the article was made, had accepted it and afterward discoverd its defects, but retained it, nor offered to return it, and the other party, the maker of it, sues him for the price stipulated to be paid for it, he cannot recover it on the contract, but he may recover on the *quantum meruit* the actual value of such defective article, but no more. And what was the necessary inference and deduction from such a principle, but this, that if the party for whom it was made, had accepted it and paid for it at the time of accepting it, and afterward discovered that it was badly made and not worth the price contracted to be paid for it, he may recover in an action for a breach of the contract, the difference between what he paid for it, and the actual value of it with such defects in the making of it?

*The Court, Gilpin, C. J., charged the jury.* To entitle the plaintiff to recover, they must show that the injury complained of arose from the default or wrongful act of the defendants in not making the boiler according to the terms of the contract between them. If the plaintiffs, or any one of them, was present when it was completed and put in the boat, and then knew that four additional tubes, or forty eight instead of forty-four, had been put

into it, and made no objection to it on that ground, it would be for the jury to say whether it did not amount on his and their part, to an acquiescence in such change and modification in the construction of it, and to a change and modification in the contract also to that extent. And if such was the case, then the plaintiffs could not avail themselves of the change as a breach of the contract, or as a ground for the recovery of damages for the injury complained of; or if .the jury should be satisfied from the evidence, that they, or any one of them, had a reasonable opportunity of inspecting and examining it, and of ascertaining the mode of its construction, the manner in which the tubes were put in it, as well as the character and quality of the work, and of the matter of which they complain, that is to say, the closeness of the tubes to each other and the irregularity or inequality of the spaces in the sheet or head plate between them, and that they were apparent and open and plain to be seen by any one who would take the trouble to examine them, and if after having such opportunities, he or they made no objection, but had the boiler put in the boat and the boat taken away and run for months between Snowhill and Baltimore, without any suggestion to the defendant or defendants of any imperfection or defect in the construction of it, then also, it would be for the jury to say whether the plaintiffs did not under such circumstances, accept it from the defendants as a fulfillment and performance of the contract on the part of the defendant; and if such should be the opinion of the jury in either case as thus presented to them, then their verdict should be for the defendant, even if they should at the same time be satisfied that the leaking of .the boiler was entirely owing to the defects alleged in the construction of it with forty-eight, instead of forty-four flues, and with the unusually small and unequal spaces between them.   But if the jury should be satisfied from the evidence, that the injury complained of resulted from the negligence or default of the plaintiffs, or their agents, or servants, as

for instance, if it resulted from letting the water get down so low in the boiler that the tubes became heated and sprung and became loosened from the sheet head, or warped and cracked it, or there was not due care taken by them to cleanse and blow out the boiler, and the tubes were thereby suffered to become coated with earthy matter, and consequently to become heated and loosened, or that the injury proceeded from any other cause than a defective construction of the boiler in the manner before stated, (for no other defect had either been alleged or proved), then also their verdict should be for the defendant. If on the contrary, however, they should be of opinion from the evidence, that there was such a departure from the contract in the construction of the boiler without the knowledge, consent or acquiescence of the plaintiffs which materially weakened it, or increased its liability to leak, and that there was, therefore, any inherent and hidden or secret defect in the construction of it, not discoverable by any person of ordinary care and observation, which materially affected and impaired the strength and value of it, and that the injury complained of resulted from such defect in the construction of it, then their verdict should be in favor of the plaintiff, and they should assess their damages at a sum exactly commensurate with the injury and loss they had sustained by reason of it.

The plaintiffs had a verdict for $730.40.